[Civ. No. 19623.   Second Dist., Div. Three.   Nov. 24, 1953.]

WOODLIN METAL PRODUCTS COMPANY (a Corporation), Respondent, v. MORRIS FUTERNICK, Appellant.

J. George Bragin for Appellant.

Stone & Moran, Hugh A. Moran III and Willard J. Stone for Respondent.

SHINN, P. J.—Plaintiff sued for $40,123.79, the unpaid balance of the purchase price of certain blanks from metal stampings sold to defendant at an agreed price of $55,123.79. Judgment was for plaintiff in the amount claimed, and defendant appeals.

The court made findings as follows: ". . . it is true that plaintiff sold and delivered and defendant bought, accepted and received 185,290 pounds of aluminum blanks from metal stampings. . . . it is true that the defendant agreed to pay to plaintiff as the purchase price of said aluminum blanks from metal stampings the sum of Twenty-nine and three-fourths Cents ($.2975) per pound or a total purchase price of Fifty-five Thousand One Hundred Twenty-three Dollars and Seventy-nine Cents ($55,123.79), which sum was at said time the reasonable and actual value thereof.'' It was admitted by the pleadings that defendant had paid on account $15,000. By its cross-complaint defendant alleged that plaintiff had agreed to sell him all its metal scrap at dealers' prices prevailing on the American metal market at the time, which was 17 cents per pound; that plaintiff had available 285,000 pounds of metal scrap but delivered only 172,370 pounds. It was also alleged that plaintiff agreed to sell defendant 75,000 pounds of prime aluminum sheets at a price of $.2975 per pound and refused to deliver any part of it. Damages were sought for the alleged breach of the agreement. The allegations of the cross-complaint were found to be untrue. The able trial judge filed a memorandum of his decision in which he gave a comprehensive analysis of the evidence and answered fully all the contentions of defendant now urged on the appeal.

The blanks in question are small metal sheets, stamped out in the process of fabricating aluminum window frames from aluminum sheets at plaintiff's plant in Marshall, Michigan. The blanks were in three sizes.

Plaintiff's plant manager, Serr, wired defendant: "Morris please get in touch with me at once.'' He testified

that defendant called him by telephone and he, Serr, told defendant that plaintiff had a quantity of aluminum blanks he wished to dispose of; defendant at that time mentioned a price which the witness could not remember; defendant called him again and was told by Serr that the company had not at that time decided what it would do with the metal; defendant called Serr later and was referred to Bachman, plaintiff's purchasing agent; Bachman testified that defendant offered to pay one-fourth of a cent a pound above the best offer plaintiff received for the blanks; that he, Bachman, refused to deal on that basis and defendant said he would go to .2975; this offer was accepted by plaintiff; defendant personally went to plaintiff's plant and supervised the loading of 185,290 pounds of aluminum blanks. Several days after the loading was completed, defendant went to plaintiff's office and gave Mr. Woodham, president of plaintiff, a check for $15,000 and promised the balance on the following Monday. Defendant said nothing with respect to the nature or character of the metal he had received. In a few days defendant sent plaintiff another check for $15,000 with an endorsement on the back that it was payment in full. This endorsement was blocked out, the check was deposited by plaintiff, but was dishonored for the reason tha defendant had stopped payment. Bachman then called defendant requesting payment of the balance and defendant then stated that he had not received the metal he had expected; the telephone call was transferred to Mr. Woodham; defendant said he could not use some of the small metal blanks and Woodham told him that he might return them, to which defendant replied that they had been sold; defendant stated that the transaction might be ruled illegal, evidently referring to some expected price control, to which Woodham replied that the company would take full responsibility.

Defendant testified that in the initial conversation with Serr over the telephone, he was offered aluminum sheets and agreed to pay for them $.2975 per pound for 50 to 75 thousand pounds. Admittedly defendant received a telegram from plaintiff: "Accept your offer of .2975 for 50 to 75 thousand pounds." Plaintiff's witnesses denied having had any conversation whatever with defendant respecting the sale of aluminum sheets. One of defendant's expert witnesses testified that in the trade blanks are considered to be scrap. There was also evidence that blanks are used in the manufacture of small articles, while scrap is not.

There was an irreconcilable conflict in the evidence upon

all the points in issue, namely, whether plaintiff agreed to sell defendant aluminum sheets, as well as blanks, and whether plaintiff agreed to pay for the blanks the price of .2975 per pound or only the prevailing market price for scrap aluminum. The conflicts, as we have seen, were resolved in favor of plaintiff.

In defendant's brief we find a profession of knowledge that it is not the function of this court to reweigh the evidence or to decide questions of fact, and yet the entire argument is to the effect that the trial court should have believed defendant and disbelieved the testimony of plaintiff's witnesses. The evidence of plaintiff, which we have summarized, fully supports the findings on the material issues. We may add that the memorandum of decision of the trial court was exceptionally comprehensive and explicit. The court not only stated that it disbelieved the testimony of defendant, but gave its reasons for such disbelief.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.